## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. DOYLE, JR., | : | |
| | : | Case No. 2:20-cv-1293 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Electronically Filed |
| SENNECA HOLDINGS, INC., | : | |
| | : | |
| Defendant. | : | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Thomas E. Doyle, Jr., by and through his undersigned attorneys, files this complaint against Defendant Senneca Holdings, Inc., and in support thereof avers as follows:

### Jurisdiction

1. This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 § *et seq.*

2. This Court has subject matter jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's related, state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this judicial district.

### Parties

5. Plaintiff Thomas "JR" Doyle, Jr., ("Doyle" or "Plaintiff") is an adult individual who resides at 2530 Hunting Ridge Trail, Bridgeville PA 15017.

6. Defendant Senneca Holdings, Inc. ("Senneca" or "Defendant") is a holding company which, through its subsidiaries, manufactures and distributes doors. It is headquartered at 11502 Century Blvd., Springdale, OH 45246.

7. Senneca employs more than 15 employees and is a covered employer under the ADA and PHRA.

## Exhaustion of Administrative Remedies

8. Doyle filed a charge of discrimination with the Pittsburgh branch of the Equal Employment Opportunity Commission (EEOC) on or about October 16, 2018.

9. Doyle's charge of discrimination was dual-filed with the Pennsylvania Human Relations Commission (PHRC).

10. On or about August 20, 2020, Doyle received a Notice of Right to Sue from the EEOC. *A true and correct copy of Doyle's EEOC charge and Notice of Right to Sue is included with this Complaint, collectively, as Exhibit A.*

## Factual Background

11. Doyle was employed by a Senneca subsidiary, Chase Industries, from August 15, 2015 until his termination on July 13, 2018.

12. TMI, Inc. hired Doyle as a Customer Service Representative

13. Doyle was hired prior to Senneca's acquisition of TMI, Inc. on June 9, 2017.

14. Upon his hiring, Doyle reported to supervisors at the TMI, Inc. Robinson, Pennsylvania office, located at 5350 Campbells Run Road, Pittsburgh, PA 15205 ("Robinson Office").

15. Doyle was promoted by Senneca to "Material Handling Inside Sales Representative" on June 9, 2017.

16. As an Inside Sales Representative, Doyle's responsibilities included supporting Outside Sales Representatives and other team members, answering customer questions about products, maintaining knowledge of products and services, ensuring orders and returns were processed smoothly, and meeting regular sales goals.

17. Doyle's job responsibilities never required him to leave his desk when he was working in Senneca's Robinson Office.

18. Doyle was able to communicate effectively with other sales representatives and Senneca employees via telephone and email.

19. Doyle's job frequently required him to discuss product specifications with employees at Senneca's Ohio offices.

20. None of Doyle's job responsibilities required him to communicate with individuals in person who were not otherwise available by telephone.

21. Doyle's original job description made no mention of where he was expected to work or gave any indication that being in-office was an essential feature of the job.

22. Doyle was an exceptional employee. He was the top Inside Sales Representative for the first quarter of 2018 and has received comment cards from coworkers describing his strong work ethic.

23. As a veteran employee of over three years, Doyle had a considerable, comprehensive knowledge of TMI's product line.

24. On or around January 11, 2020, Doyle reported to Brad Fekete and Chad Johnson.

25. While working under Brad Fekete, Doyle requested several pieces of home office equipment to facilitate him working from home, including a laptop, monitor, and computer docking station.

26. Brad Fekete provided those accommodations as requested.

27. While working under Fekete, Doyle was never told that working from home was negatively affecting his job performance or was infeasible given his job requirements.

28. Doyle's reporting structure changed, effective on or about February 5, 2018, when he began to report to Senneca's Vice President of Sales Chad Cizinsky.

29. Doyle also reported directly to Senneca's Vice President of Sales and Marketing, Brad Fekete.

30. Doyle's job duties did not substantially change when he began to report to Cizinsky and Fekete.

31. In early February 2018, Robert Hinkley—the head of Senneca's Robinson office—began to admonish Doyle for working at home.

32. Over the next several months, Hinkley and Senneca Corporate Human Resources Manager Theresa Eberwine discussed Doyle's need to work from home, and, upon information and belief, began to question whether or not he should be allowed to continue.

**a. Doyle discloses his disability status and requests accommodations.**

33. Doyle has a history of Generalized Anxiety Disorder and has sought treatment for this condition since 2016.

34. Because of Doyle's disability, during intermittent periods of anxiety he is distractible and has difficulty concentrating.

35. During periods of particularly bad anxiety, Doyle is unable to leave his house.

36. Specifically, Doyle's disabilities affect his major life activities of thinking, concentrating, reading, working, and communicating.

37. Nonetheless, Doyle was able to complete his essential job requirements with certain accommodations, including the ability to periodically work from home or working in a private office setting.

38. On or about June 6, 2018, Doyle provided a letter to Eberwine from his treating physician, Dr. Kevin G. Kotar, which indicated that Doyle had been in treatment for Generalized Anxiety Disorder since August 2016. Dr. Kotar's letter says that Doyle "may benefit from work accommodations such as work-from-home opportunities, if available." *A true and correct copy of Dr. Kotar's June 4, 2018 letter is included with this Complaint as Exhibit B.*

39. In subsequent conversations with Ms. Eberwine and his supervisors at Senneca, Doyle expressed his request to work from home specifically as a request for a reasonable accommodation of his disability.

40. As an alternative to his request to work from home, Doyle requested of Hinkley, warehouse manager Scott Santo, and Chris Cummings that he be allowed to work in a vacant, private office located in the Robinson office location.

41. Doyle's request was denied, and Robert Hinkley put a post-it note on the vacant office door ostensibly reserving it for "HR."

42. Senneca does not have a full-time Human Resources representative working in the Robinson Office.

   **b. Senneca rejects Doyle's requests and fails to engage further in the interactive process.**

43. On or about June 1, 2018, Doyle had a phone call with Theresa Eberwine and Robert Hinkley regarding his requests to work from home.

44. During that call, Doyle explained that he needed to work from home because he experienced anxiety attacks and because his anxiety symptoms would sometimes make him

physically ill. Further, Doyle explained that the medication he intermittently took to treat severe anxiety attacks would make him physically sluggish and unable to drive to the office.

45. In response to Doyle's accommodation requests, Senneca administrators investigated whether it was necessary for Doyle to work in the office.

46. Senneca's investigation did not, however, focus solely on whether the accommodation request was feasible given Doyle's job requirements.

47. Instead, Eberwine sought advice on whether Doyle's job could be performed from home *and* whether Doyle had a "personality that [Senneca] will feel secure working from home and not taking advantage of the situation."

48. In an email thread shared with several Senneca administrators[1], Chad Cizinsky rejected the idea that Doyle could fulfill his job duties while working from home. Mr. Cizinsky's June 8, 2018 email supports his conclusion citing three factors:

> a. "...this position is an office based position for a person with his tenure of experience, mainly because he does not know all of the products he manages to the extent that we need him to. Having resources available to get answers, being in the plant to check on things that need to be addressed and helping others on his team is all part of the job."
>
> b. "I have received feedback form [sic] the reps he works with, that he would be more than likely to be taking part in other activities not related to his position during working hours, specifically, i am told he has an affinity for casinos."

---

[1] A true and correct copy of the June 8 email thread containing Ms. Eberwine's inquiry and Mr. Cizinsky's recommendation is included with this Complaint as Exhibit C.

    c. "I think that the rest of the team would start to feel that he was given special privileges, and I'm guessing we could not explain the 'why' [Doyle was allowed to work from home] based on privacy law."

49. Upon information and belief, Senneca based their decision not to allow Doyle to continue working from home on Mr. Cizinsky's recommendation as outlined above. This was not shared with Doyle at the time.

50. On June 20, 2018, Theresa Eberwine requested that Doyle provide more information about his requested accommodations and confirmation from his treating physician regarding "the expected duration of the condition and the chances of recovery with treatment."

51. Senneca also sent Doyle an updated job description which included a new job duty: "Team members will be located and primarily work in Senneca locations."

52. Regardless, Doyle responded to Ms. Eberwine's questions by confirming that he was "capable of performing all essential job functions, even in the [midst] of an increase in symptoms, by being able to work from home, work a flexible schedule, and/or maintain a private office wherein [he] is able to isolate [himself] from others to reduce anxiety symptoms."

53. In June 2018, Doyle gave Ms. Eberwine permission to reach out to his doctor for more details regarding his disability and requested accommodation, but upon information and belief, no one from Senneca ever did so.

 **c. Doyle is terminated.**

54. On or about May 30, 2018, Doyle suffered from a severe anxiety episode and could not go into the office for multiple days.

55. When Doyle contacted his supervisors at Senneca, he was told that he could not work from home, and instead needed to spend his accumulated sick or vacation days if he could not come into the office. This conversation occurred on June 1, 2018.

56. Doyle protested and explained that he wanted to continue working, he just could not physically come into the office.

57. During this conversation, he was told to use his paid time off to justify not being in the office but to feel free to continue to work from home.

58. This email and telephonic exchange merely exacerbated the symptoms of Doyle's disability.

59. When Doyle began to run low on sick days but still felt that he could not come into the office because of his anxiety, he received an email from Eberwine stating that he could apply for leave in accord with the Family and Medical Leave Act.

60. Eberwine's June 28 email mentioned that if he did not apply for FMLA leave, he would "stop being paid."

61. Doyle believed that this merely meant he would be taking unpaid sick days until such a time as he and Senneca could complete the interactive process to determine what reasonable accommodations could allow Doyle to continue working, despite his disability.

62. Instead, on or about July 13, 2018, Senneca mailed Doyle a box of his personal belongings from his desk at the Robinson Office without further explanation.

63. Doyle then contacted Theresa Eberwine, and she informed Doyle that he had been terminated for "job abandonment."

64. Between Eberwine's June 28 email and his termination on July 13 for "job abandonment," nobody from Senneca contacted Doyle regarding his requested accommodations or his absence from the workplace.

65. Upon information and belief, Senneca never contacted Doyle's treating physicians to verify his disability or the accommodations he requested.

66. Senneca is a "covered employer" under the ADA and PHRA, as it has over 15 or more employees for 20 or more calendar weeks in the current year. See 42 U.S.C.A. §§ 12111(2), 12111(5)(A)

## Count I: Disability Discrimination--Failure to Accommodate
## Americans with Disabilities Act

67. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

68. Title I of the ADA provides that no "covered entity shall discriminate against a qualified individual on the basis of disability." See 42 U.S.C.A. § 12112(a).

69. "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an […] employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship…" See 42 U.S.C.A. § 12112(b)(5)(A).

70. Doyle was a qualified individual with a disability, as those terms are defined in the ADA.

71. Doyle's diagnosed Generalized Anxiety Disorder substantially limits his neurological symptoms and his major life activities of driving and working without accommodation.

72. Senneca was on notice of Doyle's disabilities and the effect they had on his ability to perform his job without accommodations.

73. Doyle made several alternative requests for accommodations to allow him to perform his job, including working from home and working in an unoccupied, private office in the Senneca Robinson facility.

74. Senneca failed to provide any reasonable accommodations for Doyle and instead caused a breakdown in the interactive process by:

   a. Failing to seek more information to aid in developing appropriate, reasonable accommodations;

   b. Failing to respond to communications about accommodations, instead merely deflecting and asking Doyle to take FMLA leave;

   c. Obstructing the interactive process by relying on dubious assertions that Doyle would be derelict in his duties when working from home and that other employees would be jealous of Doyle's privileges; and

   d. Not communicating these beliefs to Doyle as part of the reason for rejecting his requests for reasonable accommodations.

75. Working from home is a reasonable accommodation of Doyle's disability and would allow him to perform the essential functions of his job.

76. Senneca discriminated against Doyle because of his disability when they fired him for "job abandonment" after Senneca themselves caused the breakdown in the interactive process.

77. As a result of Senneca's discrimination and failure to accommodate Doyle's disabilities, Doyle has suffered substantial injury, damage, and loss, including, but not limited to,

physical illness, emotional distress, reputational damages, loss of his career, economic injuries, and other direct and consequential damages.

78. As a result, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for the following relief:

a. A judgement in favor of Plaintiff and against Defendant declaring that Defendant's failure to accommodate Plaintiff's disability violates the ADA;

b. Award Plaintiff economic compensatory and punitive damages for pecuniary loss, mental anguish, embarrassment, emotional distress, loss of enjoyment of life, and other nonpecuniary losses in an amount to be shown at trial;

c. Award Plaintiff his reasonable attorneys' fees, expert fees, costs and pre- and postjudgment interest;

d. Grant such other and further relief as the Court deems just and proper under the circumstances.

### Count II: Disability Discrimination--Retaliation
### Americans with Disabilities Act

79. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein**.**

80. Doyle engaged in protected activity by requesting accommodations for his disabilities.

81. Defendant retaliated against Doyle by terminating his employment after he requested reasonable accommodations instead of providing Doyle with those accommodations or suggesting alternative accommodations through an interactive process.

82. Defendant's adverse employment actions were causally linked to Doyle's repeated requests for reasonable accommodation for his disabilities.

83. Defendant's conduct constitutes unlawful retaliation in violation of the ADA

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for the following relief:

   a. A judgement in favor of Plaintiff and against Defendant declaring that Defendant's retaliation and failure to accommodate Plaintiff's disability violates the ADA;

   b. Award Plaintiff economic compensatory and punitive damages for pecuniary loss, mental anguish, embarrassment, emotional distress, loss of enjoyment of life, and other nonpecuniary losses in an amount to be shown at trial;

   c. Award Plaintiff his reasonable attorneys' fees, expert fees, costs and pre- and postjudgment interest;

   d. Grant such other and further relief as the Court deems just and proper under the circumstances.

### Count III: Discrimination
### Pennsylvania Human Relations Act

84. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

85. At all times relevant herein, Defendant was an "employer" within the meaning of the PHRA.

86. At all times relevant herein, Doyle was employed by Defendant Senneca as an "employee" within the meaning of the PHRA.

87. The PHRA prohibits employers, such as Defendant, from terminating an employee on the basis of disability

88. The PHRA makes it an "unlawful discriminatory practice" to discriminate against an employee in any way because he "opposed any practice forbidden" by the PHRA or because he "made a charge, testified or assisted" in any proceeding under the Act. 43 P.S. § 955.

89. Doyle engaged in protected activity under the PHRA by requesting accommodations for his disability with the EEOC.

90. Defendant's discriminatory and retaliatory treatment, outlined more fully above, was motivated by Doyle's protected activities under the PHRA.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for the following relief:

a. A judgement in favor of Plaintiff and against Defendant declaring Defendant's actions to be in violation of the PHRA;

b. Award Plaintiff economic compensatory damages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff his reasonable attorneys' fees, expert fees, costs and pre- and postjudgment interest;

e. Award declaratory, injunctive and equitable relief against Defendant; and

f.	Grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 1, 2020			Respectfully submitted,


					*/s/ Nicholas Pahuta*
					Marcus B. Schneider, Esquire
					PA I.D. No. 208421
					Nicholas Pahuta, Esquire
					PA I.D. No. 324355
					STEELE SCHNEIDER
					420 Ft. Duquesne Blvd., Suite 500
					Pittsburgh, PA 15222
					(412) 235-7686
					(412) 235-7693/facsimile
					marcschneider@steeleschneider.com
					nickpahuta@steeleschneider.com

					Counsel for Plaintiff