**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS E. DOYLE, JR.**, | ) | CIVIL ACTION NO.  20-1293 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **SENNECA HOLDINGS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.   Introduction

This case arises from the termination of the employment of plaintiff Thomas Doyle ("Doyle") by defendant Senneca Holdings, Inc. ("Senneca").  The magistrate judge's report and recommendation ("R&R") (ECF No. 41) recommended that Senneca's motion for summary judgment (ECF No. 31) be granted in part, with respect to the retaliation claims, and denied in part, with respect to the "failure to accommodate" claims.  Pending before the court are timely objections to the R&R filed by both parties (ECF Nos. 42, 43).  Doyle and Senneca filed reply briefs (ECF Nos. 47, 48).  The matters are ripe for disposition.


II.   Procedural and Factual History

The parties thoroughly developed their respective positions in the Concise Statements of Material Facts ("CSMF") (ECF Nos. 34, 38, 40) and provided appendices of exhibits (ECF Nos. 35, 38-1).  The chronology of events is essentially undisputed.

Effective February 5, 2018, Doyle was promoted to a position as an Inside Sales Representative, reporting to Chad Cizinsky ("Cizinsky") (ECF No. 34 ¶ 1).  On February 9, 2018, in response to an email from Doyle advising that he would work from home that day, Vice President Robert Hinckley ("Hinckley") responded:  "remember that the job location is in the office."  (ECF No. 34 ¶ 3).

On May 30, 2018, Doyle sent an email advising that he would work from home the next day.  Hinckley responded:  "You need to come into the office."  (ECF No. 34 ¶ 4).  Doyle did not report to the office on May 31 or June 1, 2018.   (ECF No. 34 ¶ 5).

On June 1, 2018, Doyle had a telephone call with Hinckley and Theresa Eberwine ("Eberwine"), the Corporate HR and Safety Manager.  (ECF No. 34 ¶ 6).  Doyle informed them that he was working from home because he was having anxiety attacks, was on medication, and was nauseous and vomiting (ECF Nos. 34 ¶ 6; 38 ¶ 6).  During the call, Doyle acknowledged that his position required him to be in the office and working from home was not an option (ECF No. 34 ¶ 6).  Eberwine's contemporaneous notes reflect that she asked Doyle whether "he needed anything else from us to be able to do his job and he said there was nothing else needed." (ECF No. 40 at 60).

On June 6, 2018, Doyle sent Hinckley and Eberwine a note from Kevin Kotar, D.O. ("Dr. Kotar") dated June 4, 2018 (ECF No. 34 ¶ 7).  The note stated, in its entirety:

> Thomas Doyle, Jr. (DOB 8/2/1980) has been under my care since 8/22/2016.  He has been diagnosed with Generalized Anxiety Disorder.  He may benefit from work accommodations such as work-from-home opportunities, if available.  Please call with any questions you may have.

 (ECF No. 40 at 86).

On June 8, 2018, Eberwine sent an email to Hinckley, Cizinsky and Lisa Botz ("Botz"), Vice President of Human Resources, notifying them that they had to make a decision because Doyle "provided a doctor's note advising he is being treated for a condition that would be protected under mental health disorders with the ADA."  (ECF No. 40 at 63).  Eberwine solicited input on whether Doyle's position required his presence in the office or if it was viable for him to perform all duties from home, and whether they felt secure that Doyle would not take advantage of working from home.  (ECF No. 34 ¶ 9).

Cizinsky responded that afternoon, opining that the position is office-based for a person of Doyle's tenure.  Cizinsky also cited two other concerns, namely, that Doyle might engage in non-work activities (and had an affinity for casinos) and that other team members might feel he was given special privileges.  (ECF No. 40 at 62-63).[1]

On June 12, 2018, Eberwine attempted to set up a conference call with Cizinsky, Hinckley and Botz, noting that Doyle was "pressuring me for a decision."  (ECF No. 40 at 62).  On June 19, 2018, Cizinsky sent an email stating that Doyle called that morning to report that Doyle would be off work to take care of a sick child (ECF No. 40 at 62).  Doyle asked Cizinsky how he should be handling his attendance, expressed concern about his need to take sick days, and inquired how the situation would be addressed going forward.  (ECF No. 40 at 62).  Eberwine responded to Cizinsky that Doyle had also reached out to her in the past week or so.  (ECF No. 40 at 62).

On June 20, 2018, Eberwine sent Doyle an email advising Doyle that the attached letter outlined additional information they needed to evaluate his request to work from home, as well as other options. (ECF No. 40 at 69).  The attached letter (ECF No. 35 at 173) quoted the content of the June 4, 2018 medical note from Dr. Kotar, and advised Doyle:  "We need more information from your physician so we can evaluate your request in your current capacity which is a full time office position." *Id.*  The letter directed Doyle to "contact your physician and ask him to provide the following information:

1. Please provide information regarding the expected duration of the condition and the chances of recovery with treatment.

2. Whether you can perform the essential functions of your position with in office accommodation? If so, please describe any and all possible accommodations

---

[1] Botz and Eberwine, who were the Senneca human resources employees responsible for the interactive process, recognized it would have been inappropriate to base the accommodation decision on those concerns.  (ECF No. 40 at 28, 50).  Doyle's contention that Senneca would have based its decision on improper reasons is purely speculative.

that are recommended and the expected duration during which the accommodation would be necessary.

3.  If no reasonable accommodation exists at times when your condition flares-up, and a leave of absence is requested during times of flare-ups, please describe the frequency and expected duration of anticipated absences."

*Id.*  Eberline requested that Doyle provide the physician's information by June 30, 2018, and stated that until the information was provided, his position required him to be in the office.  *Id.*

The letter advised Doyle that he had the right to apply for 12 weeks of FMLA, which may be taken intermittently; that it was Company Policy that employees were required to use all sick and vacation days before beginning any unpaid FMLA; and that Doyle had exhausted all available sick time for 2018. *Id.*  Included with the letter were short-term disability claim forms and a brochure with contact information for Senneca's leave administrator, AbsencePro.  (ECF No. 34 ¶ 15).

On June 26, 2018, Doyle sent Eberwine an email stating that he received the registered letter requesting additional information from his physician, but advising that his job description was not attached.  Doyle stated:  "Once this information has been provided I will ask my physician to provide the additional details."  (ECF No. 40 at 68).  Doyle also requested another copy of Eberwine's June 20, 2018 email.

Eberwine responded to Doyle 11 minutes later on June 26, 2018, attaching the job description and a copy of her previous email.  (ECF No. 40 at 68).  Eberwine also clarified that the previous email "does not state any denial of request, [it] only asks for additional information."  *Id.*

In her response, Eberwine asked Doyle to advise when he would be in the office and noted that they had not received "any communication regarding your absence for yesterday nor for today."  *Id.*  After June 19, 2018, Doyle stopped going to work, stopped calling in to notify Senneca of his absences, and stopped communicating with his managers and the outside sales

representatives he was supporting.  (ECF No. 34 ¶ 17).  On June 26, 2018, Cizinski sent an email reporting:  "To my knowledge, [Doyle] has not communicated with anyone that he was going to be absent for the last 4-5 working days, I spoke to the reps he handles and he has not indicated to them that he was not working nor that he was going to return. They are scrambling to get needed info and quotes/orders completed."  (ECF No. 35 at 191).

On June 26, 2018, at 5:16 p.m., Doyle sent an email to Eberwine, stating that he had reached out to Dr. Kotar, as requested, and would do his best to obtain the information as quickly as possible.[2]  (ECF No. 40 at 71).  Doyle reiterated that he was capable of performing all essential job functions, even with an increase in symptoms, by "work[ing] from home, work[ing] a flexible schedule, and/or maintaining a private office where I am able to isolate himself from others to reduce anxiety symptoms such as distract-ability [sic] and difficulty concentrating."  *Id.* Doyle explained that there were days in which he was physically unable to leave home due to the severity of his anxiety and advised that "[i]n the interest of transparency through this interactive process," he was "currently in the throes of a flare-up due to this process."  *Id.*  Doyle indicated he would like to use his available paid-time-off and then FMLA, if needed, until the issues were resolved.  *Id.*  Doyle expressed his concerns about the stigma of disability and requested that confidentiality be maintained.  *Id.*  The June 26, 2018 email was Doyle's last communication with Senneca prior to his termination.

On June 28, 2018, Eberwine sent Doyle an email (flagged high importance) to alert Doyle that he had exhausted all available sick time, and all but 8 hours of vacation time.  (ECF No. 40 at 71).  If Doyle did not come into the office the following Monday, the last vacation time

---

[2] Doyle admitted that he never provided the June 20, 2018 letter to his physician.  (ECF No. 34 ¶ 18).  At his deposition, Doyle acknowledged that he never had any intention of sharing the letter with Dr. Kotar or applying for FMLA or short-term disability leave.  (ECF No. 35 at 50-51, 56).

would be allocated and after that, his pay would stop.  *Id.*  Eberwine stated:  "If you have any questions, please do not hesitate to give me or [Botz] a call."  *Id.*

Doyle did not respond to this email.  On July 3, 2018, Brad Fekete, Eastern Regional Sales Director, asked whether a decision had been made about Doyle because his absence was causing some daily operational issues.  (ECF No. 40 at 75).  Eberwine reported that Doyle had not shown up for work and effective that day was on unpaid leave of absence ("LOA"), and that Cizinsky was working to reassign Doyle's accounts to another person.  *Id.*

On July 9, 2018, Eberwine sent an email to Botz, stating:

To date, JR Doyle has NOT applied for FMLA. Per his request on June 26, I provided the information to JR on how to apply for FMLA on 6/28. We have not heard anything from him since that time. Employees are still required to follow standard call off procedures when on FMLA. Even though he has not applied, he has not called in to contact us or report off since 6/28. What should our next action be? Do you think we have a case to terminate his employment?

(ECF No. 35 at 196).

On July 12, 2018, Eberwine sent an email to Doyle's superiors reporting:  "Just an FYI. [Doyle] has exhausted his 15 days to file for FMLA as of close of business today. Lisa and I have agreed, this constitutes job abandonment in full compliance. His letter of termination is in the mail."  (ECF No. 35 at 202).  Senneca issued the termination letter to Doyle on July 13, 2018.  (ECF No. 34 ¶ 21; ECF No. 35 at 204).

III.    Standard of Review

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).  Rule 72(b)(3) requires de novo review of any recommendation that is dispositive

of a claim or defense of a party to which proper objections were made. *See Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, No. 1:17CV184, 2021 WL 1147010, at *1 (D. Del. Mar. 25, 2021). The magistrate judge in the R&R correctly set forth the standard of review for summary judgment motions. (ECF No. 41 at 5-6).

IV.   Discussion

Doyle asserts claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Doyle contends (1) that Senneca failed to reasonably accommodate his disability; and (2) terminated his employment in retaliation for seeking an accommodation. As the magistrate judge correctly noted, ADA and PHRA claims are subject to the same legal standards. (ECF No. 41 at 6 n.1).

A. **Failure to accommodate claim**

To state a claim for disability discrimination under the ADA based on an alleged failure to accommodate a disability, a plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination ... [which] include[s] refusing to make reasonable accommodations for [his] disabilit[y]." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009). If an employee requests an accommodation, the employer and employee must determine an accommodation that is reasonable through a "flexible, interactive process." *Id.* at 187. In this case, it is undisputed that Doyle requested an accommodation for his generalized anxiety disorder. The parties dispute who was responsible for the breakdown of the interactive process. "[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 317 (3d Cir. 1999).

7

Both employers and employees have a duty to engage in an interactive process to search for an appropriate reasonable accommodation and to act in good faith. *Id*. at 312; *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997). Both the employee and employer hold information the other does not have or cannot easily obtain. *Taylor*, 184 F.3d at 316. "The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions." *Id.* at 317.

To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id.* at 319–20. The first two elements are not disputed. The third element needs to be addressed.

### 1. Good Faith Effort

An employer can demonstrate that it participated in good faith in several ways, such as by "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Id.* at 317. The Court of Appeals commented: "We do not think this process is especially burdensome." *Id.*

Of particular relevance to this case, the Court of Appeals for the Third Circuit has made clear, in numerous decisions, that "an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals."

8

*Taylor*, 184 F.3d at 317; *accord Petti v. Ocean Cty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020); *McGlone v. Philadelphia Gas Works*, 733 F. App'x 606, 611 (3d Cir. 2018).  An employee's "insistence on a single unreasonable accommodation and rejection of all other possibilities renders [the employee] the party responsible for the breakdown in the interactive process." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 850 (3d Cir. 2016) (citing *Taylor*, 184 F.3d at 316 n. 7).

Judgment as a matter of law in favor of the employer has been granted in numerous decisions in which the employee failed to respond to the employer's requests for information.  In *Hamza v. United Continental Holdings, LLC*, No. CV 19-8971, 2021 WL 3206814 (D.N.J. July 29, 2021), the court explained that "an employer has the right and obligation to request additional information the employer believes it needs in order to substantiate a request for an accommodation under the ADA."  *Id.* at *15.  In *Hamza*, the court dismissed a failure to accommodate claim where the employer engaged in an interactive process by requesting information it needed to process the employee's request for disability leave, even though the employee viewed those requests as excessive and it was difficult to respond to the requests in the employee's condition.  *Id.*  In *Petti*, the court affirmed summary judgment where the employer rejected the employee's demand for a leave of absence, but communication ultimately broke down when the employee failed to respond to a request for a meeting to discuss other accommodations.  *Petti*, 831 F. App'x at 64.

In *Tatum v. Hospital of University of Pennsylvania*, 57 F. Supp.2d 145, 149 (E.D. Pa. 1999), aff'd, 216 F.3d 1077 (3d Cir. 2000), the court rejected a failure to accommodate claim in factually similar circumstances.  The employee ("Tatum") submitted a brief note from her doctor that stated that Tatum could not lift or pull heavy patients.  *Id.* at 149 & n.5.  The court explained that the doctor's "cryptic note" did not describe in detail the nature of the disability, its cause, whether the disability was permanent or temporary, the treatments Tatum was receiving, or the

9

restrictions needed to accommodate plaintiff's disability.  *Id.* at 148-49.  The court commented:

"In short, the note did not provide sufficient information to determine whether the disability was

protected under the ADA."  *Id.* at 148.  The employer asked Tatum to provide a more detailed

letter or a physical capabilities form from a doctor.  The court observed that an employer is

entitled to seek more detailed information and stated:  "The Third Circuit has clearly held that a

plaintiff must provide her employer with sufficient information regarding her disability."  *Id.* at

149 (citing *Taylor*).  Tatum did not provide more detailed information and the employer,

therefore, required Tatum to perform her normal assigned duties without any accommodations.

Under these circumstances, the court concluded: (1) no reasonable jury could find that the

employer was at fault for the breakdown of the interactive process; (2) the employer did not

violate the ADA by requiring Tatum to perform normal duties until she provided the requisite

information; and (3) no reasonable jury could find that the employer acted in bad faith.  The

court entered judgment as a matter of law in favor of the employer.  *Id.* at 150.

   The existence of some factual disputes about the underlying motivations of some of the

employer's decisionmakers will not defeat summary judgment where it is clear the employee

was responsible for the breakdown of the interactive process.  For example, in *Conneen v. MBNA*

*America Bank, N.A.*, 334 F.3d 318, 331-32 (3d Cir. 2003), the court noted a dispute of fact about

the contents of a conversation about the duration of the employee's disability and recognized that

an employee might be reluctant to share details about a mental disability.  The court concluded,

however, that the employer made a good faith effort to engage in the interactive process as a

matter of law and commented:  "[employer] invited that communication numerous times, and we

are less than persuaded by [the employee's] attempt to charge [the employer] for the fact that she

declined the invitations and openings it afforded her."  *Id.* at 332.

   Similarly, in *Belles v. Wilkes-Barre Area School District*, 843 F. App'x 437, 439 (3d Cir.

2021) (involving a quadriplegic wrestling coach), the court affirmed a grant of summary

judgment even though over 100 days passed before the school district made any effort to respond

to the request for accommodation (i.e., moving practice to the gym or cafeteria or installation of

a wheelchair lift) and the superintendent angrily declared that practice would remain in the

basement and the district did not want to pay for a wheelchair lift.  The plaintiff ("Belles") also

contended that the director of human resources asked Belles to quit to avoid accommodating

him, and pointed to negative comments from a parent and volunteer assistant coach.  *Id.* The

court held that these facts, even when interpreted in Belles' favor, were not sufficient to

reasonably infer that the school district engaged in the interactive process in bad faith and did not

raise a question of material fact that would defeat summary judgment.  *Id.*  The court explained

that Belles' arguments were purely speculative where his resignation foreclosed the process to

find an accommodation.  *Id.*  In this case, Doyle's effort to defeat summary judgment by

speculating that Senneca predetermined that it would not accommodate him is similarly

unavailing.  As explained below, Doyle's silence and failure to respond to Senneca's request for

more detailed medical information about his condition foreclosed Senneca's ability to engage in

the interactive process in order to decide on an appropriate accommodation.

   The evidentiary record in this case reflects that Senneca, as a matter of law, engaged in

good faith in the interactive process.  Upon being notified about Doyle's request for

accommodation, Senneca's human resources department sought information from the sales

department about the essential functions of Doyle's position and sought information from

Doyle's treating physician about the extent of his disability and possible accommodations.

Eberwine sent numerous emails to Doyle and responded promptly to each of Doyle's

communications.  *See Taylor*, 184 F.3d at 317 (articulating the ways in which an employer can

demonstrate that it participated in good faith).

   It was not unreasonable for Senneca to solicit more specific information from Dr. Kotar

about Doyle's condition.  The June 4, 2018 note from Dr. Kotar (ECF No. 40 at 86) was vague

and lacking in detail – Dr. Kotar did not explain the extent of Doyle's limitations, the kinds of accommodations that were needed or whether any accommodations were needed (in the brief note, Dr. Kotar stated only that Doyle "may benefit" from accommodations "such as" work-from-home opportunities "if available.")  (ECF No. 40 at 86).  *See Tatum*, 57 F. Supp.2d at 148-49 (employer entitled to seek additional information where employee submitted cryptic note from doctor).

It is clear on the record that Doyle stopped participating in the process.  In his June 26, 2018 email, Doyle recognized that he was engaged in an interactive process and that Senneca was waiting on information from Dr. Kotar.   Despite representing to Eberwine that he would obtain that information as quickly as possible (ECF No. 40 at 71), Doyle failed to forward Senneca's request to Dr. Kotar.  Doyle's litigation argument that he provided all the necessary information to Senneca himself is not supported by the record.  Doyle did not provide Senneca with any other information from Dr. Kotar about his condition and Doyle did not tell Senneca that he was not going to obtain that information from Dr. Kotar.  Doyle also did not express concern with the information sought by Senneca or try to narrow the requests.  Senneca was left waiting and expecting to receive additional information from Dr. Kotar to enable it to evaluate what accommodations would be needed.  Because Doyle did not provide the necessary medical information and Senneca could not proceed further in the interactive process, the court must conclude, even drawing all reasonable inferences in favor of Doyle, that no reasonable jury could find that Senneca was at fault for the breakdown in the interactive process.  *See Tatum*, 57 F. Supp. 2d at 149–50.

Doyle's failure to provide the requested medical information was accompanied by a complete cessation of communications by him.  Eberwine's June 20, 2018 letter instructed Doyle that until the information was provided by Dr. Kotar, "your position requires you to be in the office."  (ECF No. 35 at 173).  Doyle's June 26, 2018 email sent at 5:16 p.m. reiterated that he

was capable of performing all job functions, but needed certain accommodations.  Doyle, even when at home, however, did not engage in the basic task of letting Senneca know his work status.  Doyle stopped calling off sick and did not have any interactions with his boss or co-workers after June 19, 2018.  *See Soutner v. Penn State Health*, 841 F. App'x 409, 416 (3d Cir. 2021) (affirming dismissal of ADA claim where employee failed to follow absence-reporting procedures).  Doyle failed to respond to Eberwine's "high importance" email of June 28, 2018, which notified him that he had used his available leave and vacation time and asked him to call.  Doyle failed to apply for FMLA leave or a short-term disability, although the forms were sent to him twice and he said he would apply.  Doyle failed to communicate with anybody at Senneca in any way after the June 26, 2018 email.  Senneca waited until July 12, 2018 – after days of silence by Doyle – before terminating Doyle's employment for abandonment.

Under these circumstances, no reasonable jury could find that Senneca was responsible for the breakdown of the interactive process or that Senneca acted in bad faith.  *See Tatum*, 57 F. Supp.2d at 150.  Senneca engaged in the good faith steps identified in *Taylor*.  Doyle's failure to provide the requested medical information about his condition and his subsequent silence caused the breakdown in the interactive process.  Doyle's argument that Senneca predetermined in bad faith that it would not accommodate his disability is an exercise in pure speculation.  *See Belles*, 843 F. App'x at 439.  Senneca never had an opportunity to propose (or refuse) an accommodation because Doyle abandoned the interactive process.  Senneca's motion for summary judgment on the failure to accommodate claim will be granted.[3]

B.  Retaliation claim

As the magistrate judge recognized, the parties agree that: (1) Doyle engaged in protected activity by requesting an accommodation for his disability; (2) the termination of his

---

[3] The court need not address Senneca's alternative theory that offering Doyle intermittent leave constituted a reasonable accommodation.

employment constituted an adverse employment action; and (3) Senneca pointed to a legitimate, nondiscriminatory reason for the discharge, i.e., job abandonment.  (ECF No. 41 at 13).  The parties dispute whether Senneca's stated reason was a pretext for discrimination.

The magistrate judge pointed out that between June 26 and July 12, 2018, Doyle did not contact Senneca in any fashion and did not apply for FMLA leave.  The magistrate judge concluded that there was no evidence by which a reasonable jury could find pretext.  (ECF No. 41 at 14).  The court agrees with and adopts this aspect of the R&R.

In his objections, Doyle argues that a jury could find the termination was a continuation of Senneca's alleged bad faith participation in the interactive process (ECF No. 42 at 1).  For the reasons set forth above, the record demonstrates as a matter of law that Doyle, not Senneca, failed to participate in the interactive process.  The court agrees with the magistrate judge that no reasonable jury could find on this record that Doyle's termination was a pretext for discrimination.  Senneca is entitled to summary judgment on the retaliation claim.

V.    Conclusion

For the reasons set forth above, Doyle's objections to the R&R (ECF No. 42) will be denied and Senneca's objections to the R&R (ECF No. 43) will be granted.  The R&R (ECF No. 41) will be adopted in part with respect to the retaliation claim, as supplemented in this opinion, and rejected with respect to the failure to accommodate claim, as explained in this opinion.  Senneca's motion for summary judgment (ECF No. 31) will be granted in its entirety and the case will be marked closed.

An appropriate order follows.

Dated:  April 27, 2022

BY THE COURT,

/s/ Joy Flowers Conti

14

Joy Flowers Conti
Senior United States District Judge